Case number 3-18-50676, Caterpillar, Inc., Appley v. Volt Information Sciences, Inc., Ocala. Thank you. Good afternoon. Good afternoon, Your Honors. Mr. O'Donnell, would you like to proceed? I would. Thank you, Your Honor. And I apologize that my computer is apparently too old to accommodate the virtual background, so I apologize for that. And we have apparently failed. My staff tells me that means I need to spend the money on a new computer. Thank you, Your Honor. I know you did your argument just a little bit ago from what I understood. I know the case was docketed as a separate appeal. I want to just be clear here that as I view this, you know, it's kind of a case that has a lot of complexity to it. My goal here today is to boil things down real basically for you. And what I'd like to point out at the outset was back in May of 2013 when Volt, who wasn't a party to this litigation in Alabama involving the Secor Sherman tugboat, we received a demand for indemnification under the contract. And our primary carrier, AIG, hired a claim service, Gallagher Bassett, well-known claim service, and they appointed counsel fairly soon. Notification of the claim to our excess carrier went out to travelers after that demand was coming in from Caterpillar. And for about the next year, Gallagher Bassett had an attorney that represented Volt. Volt was not a party in that case, but she monitored that litigation. And ultimately, as the court knows, the case settled. But what I want to stress here is that the settlement demand in that case was $150 million. The case ended up settling for, I think, somewhere below 50 million. And Volt was never a party to that case. And that's pretty significant here because what you have in this case primarily is a claim for indemnification based upon a express clause in the contract that says we're going to compare the fault of Volt to the fault of Caterpillar. The only case law for years has held that that is essentially a contribution claim, though based on a contract. And early on in the case, that was the circuit court's ruling. And that's why you have the second minute complaint that was at issue when these discovery disputes cropped up. What I'd also like to emphasize here, though, is that when we have a comparison of fault in a contribution case, the issue is still one of cause. And that started out, we thought, the right way for us in this case back in 2015 when we got into discovery. We produced a variety of Volt witnesses, none of whom ever gave depositions in the underlying case, had nothing to do with the Alabama litigation. And then we went over to Lafayette, Indiana in the summer of 2016, and we started taking depositions of CAD employees at the factory who supervised, trained, instructed, and directed the work of Volt loaned workers who did entry-level factory work. Why is that important? Because after we started doing those depositions, we then received the motion from Caterpillar that said, oh, the discovery in this matter should be limited to what happened in the vendor action that Volt was never even a party to. And so we never were, then we were forced, stalled, and constrained by the court's order that was drafted by Caterpillar counsel. It said, look, you've got no ability in this case to put on any evidence of causation. You're just bound to some litigated matter that you were not a party to. It's in that context that we find ourselves here today. And I want to be real clear. Could you talk first about our jurisdiction? I can, Judge. I will be happy to do that. Under 303A3, there was a final judgment entered against Travelers. They were held in contempt. They were fined over $40,000 for choosing to not disclose my claim file documents for Volt that they had been receiving since 2013. And the reason that's important, Judge, is because Travelers, if you look at the March hearing, and you look at the May hearing, and the August hearings in 2018, Travelers and myself made clear that there are two things going on here, a Caterpillar claim to coverage, but then a completely separate defense of a negligence claim that CAT is pursuing against Volt. And that's the unique anomaly here. But under 303A3, Judge, that was a final judgment. Our rights were affected by that very significantly because our attorney for Gallagher Bassett and AIG and Gallagher Bassett were reporting upstream. This was a $150 million starting claim, which ultimately settled for below $50 million. AIG policy was $2 million. It's not here under Rule 304? Well, we've briefed that, Judge, but I think we have the right, the thing I think is just so basic to answer your jurisdiction questions is 303A3 because a final judgment of contempt against Travelers was entered, and then 303A3 says any party thereafter can file a concurrent notice of appeal. 303 has a final judgment on all of the claims and all of the parties. That's not the case here. Well, I agree with that, Judge, but what I'll say is, let's say that we were not even a party to this case. And let's say that the litigation against Volt had been filed in a separate Elkhart case because as the court knows, this claim against Volt could have easily been filed in Elkhart separately. And that's been something that Judge McCuskey has always had a hard time wrapping his head around because Caterpillar says, hey, look, this is just a coverage case, but for Volt, it's not. It's a case premised on causation and proximate cause based upon the language in the contract. And so we have rights here as the insured. As the court knows, the insureds report to their carriers. We reported the claim. And as to the jurisdictional issue here, even if we were sued in a separate Elkhart case, I would have standing to come in for Volt and say, hey, wait a minute. I have a very significant, substantial interest in the counsel, Volt's staff back to our carriers. And so I think, Judge, we have a very, very substantial interest here. Even if it's not a 303, A3 issue, we have standing because this is a substantial order that affects our material rights to our own claim materials that Travelers possesses. Okay. And if I may, Judge, what I want to be clear here is it's so important that we look at the court's orders after we went to Indiana in March of, or the summer of 2016, did these cat depositions. And I don't think cat liked the content of those depositions. Then the motion to restrict discovery came after that. Subpoenas to our claim service, Gallagher Bass, were then issued and to our claim consultant, Willis. In February of 2018, Judge McCuskey entered an order that said that any privilege issues regarding Volt are stayed until Volt provided a third privilege log. We'd already provided him two regarding the privilege materials with Gallagher Bassett and Willis. This is in February of 18. We went back to court a month later and Judge McCuskey asked Caterpillar's counsel at the hearing in March, well, are you to get underneath their tent? That's what we might call this in the Midwest. And Caterpillar's counsel said, no, we don't want the documents that are pertaining to Volt's defense, to Volt's strategy here. Now, what I can tell the court, though, I haven't seen every single email that, for example, our risk manager or in-house counsel sent to Travelers or to Gallagher Bassett, because the primary policy with AIG was only $2 million. Of course, they're reporting upstream to the excess carrier Travelers that has the coverage above the primary coverage. Now, it is so important today here for the court to understand that we have this order that was entered. And then just for the record, so it's easy for the clerks of the court, it's the order that was entered in March of 2018, drafted by Caterpillar. And at paragraph six of that order, it specifically says that the court also stays Caterpillar's request for production of Travelers documents that were disclosed to third parties or that are claimed to not be privileged within the Bates ranges. And it gives the ranges and Judge McCuskey entered this order. It says until the court reviews in camera, the documents that Volt has provided to the court pursuant to the February order. That February order said specifically that Volt will produce the log to Caterpillar and Caterpillar, the court shall receive a copy of the confidential binder of documents being withheld, separated by tab and specifying the privilege. We provided these binders to Judge McCuskey. Now, when there's 50 or $150 million at stake, it's unfortunate, but there are just a ton of claim documents because you have claimed services. You have our claim consultant, Willis, who we hire to do consulting, and then you have our carriers. And what has always been the genesis of this issue for Caterpillars, we need to get to the information about our claim to coverage on Volt's policy. What this court has to understand and be able to sort out to properly decide this and that being the fact that in May of 13, they threatened the litigation. It ensued just nine months later in February of 14 when they filed suit in federal court in Illinois. And then the matter was voluntary dismissed a few months later and refiled in Peoria County Circuit Court for a lack of diversity. But I have to just beseech the court to look at the hearings from March of 2018. And in this hearing, it was very clear that Mr. Reedy said, I want to be crystal clear. We are not trying to get into the defense strategy in this case. And in case anything's unclear about that, I want to set the record straight. That was in response to the judge saying, I'd say here in the Midwest, you're trying to get your nose under their tent to figure out what they're doing today in preparation for this case. And what we have to discern here, Judge, and what travelers very clearly argued in the February hearing, they argued it in the March hearing. And it was argued as well by myself in March and August that there's different types of claim documents here that travelers possesses that it's so important that we have to discern between. And the problem here is unfortunately, even back into a hearing that we held, I think, in January of 2018, even Mr. Reedy suggested that the court was going to take matters in camera that pertain to the subpoenas that were issued to Gallagher, Bassett, and Willis. And then again, at the hearing in March, the same suggestion was made by Mr. Reedy that we were going to do these things in camera. And in fact, that's what Judge McCuskey said. And I want to be clear here because in the August hearing, I clarified this with Judge McCuskey. And I asked him, I asked him, I said, Judge, it's my understanding here for Volt, which is the named insured on the traveler's policy, that what we're arguing about here as to the claims documents generally is not Volt's claim reporting. At page 23 of the hearing in August, on August 7th, Judge McCuskey said, look, that's what I understand. He did not address Volt. I'm not going to address Volt. But then unfortunately, we have an order, as many of yours have been in this case, not drafted by the judge, but drafted by Caterpillar, that specifically just says, turn over all the claims documents generally. And that is the problem. And I want to point out, Judge, that when Mr. Reedy argued this to Judge McCuskey back at the March hearing, he was very clear and said, look, we are looking for their evaluation of our claim to coverage. And that was in that transcript. He did not say, as I just read to you, that he wanted our claim reporting by Volt to AIG and to travelers. Now, the subpoena to, unfortunately, the subpoena issued the year earlier, which was stayed by the February order to Gallagher Bassett and a later subpoena to Willis, our claims to say that these subpoenas do not limit the discovery sought to Caterpillar's claim for coverage on Volt's policy. Why is that important? Because Caterpillar is suing us for negligent hiring, negligent supervision of an employee we didn't supervise. And unfortunately here, the distinction is that unfortunately, you know, we have an MR declaratory coverage case filed in the same action that should have been, it should have been filed in Elk Court for money damages against Volt. And that has been the judge's difficulty here all along. My last comment here, Judge, is at the end of the hearing, at that hearing before Judge McCuskey in August, he specifically said, and we talked about the fact that the March order had required us to provide these logs. And he specifically talked about the court needing to review the Gallagher log and then the third log, as well as the Willis privilege log. Those three binders were never reviewed by Judge McCuskey. And it was at that point after he did that, that he was going to then address privilege issues as contained in documents with travelers. Now, and he said that at the hearing on page 25, he said that those documents are still under review. And then we went up on appeal two months later because he denied the motions to clarify and reconsider that we had filed. And I'm not sure if I'm out of time. Something might've beeped. No, in the red light. Okay. Okay. I'm sorry. I got so many lights on the screen here. I apologize. But I think to get a full understanding of this, the March transcript has the afternoon hearing is very, very important that starts with the R number of 230. And that hearing, even Mr. Reedy said, we're not trying to get under their hood here. The problem with the order that we're appealing from concurrently with travelers is that the order was blanket. It just said, Oh, these are just general claim documents generate an ordinary course of business. That is too nominal of an analysis in this kind of a case. Um, and, and, and I look at this very simply, I, you know, if this was an auto case and I'm defending my insured driver and the plaintiff's attorney serves a subpoena on my carrier, sometimes the carrier brings in their attorney to quash that subpoena. That's the dispute that you have before us because all the reporting by the insured defendant and the attorneys are in that file, the insurer regarding that negligence claim. I think I'm read now. Thank you. Thank you, Mr. O'Donnell. Uh, Mr. Reedy. Thank you, your honor. Andrew reading on behalf of Caterpillar, the appellee. I want to start where the questions were about jurisdiction. Um, because I think that is important. Uh, the rules do not let a party simply appeal unilaterally, uh, from a discovery ruling. Instead, rule 304 provides the basis for an appeal of discovery, whether it be under rule 304 a or 304 B as the court knows the travelers appeal is under 30B 304 B five for finding contempt. Volt never made a motion under rule 304 304 B five except for orally at the last hearing at the after the judge had already ruled and the judge's reaction to that was your documents aren't issued here. They're travelers documents. You haven't asked to be contempt all the way through the four hearings before this. So I'm not going to hold you in contempt under 304 a the judge that essentially you've set, you sat silently about this alleged privilege for all these hearings. And so you don't have a basis for a 304 a hearing. So what does volt do? They file a separate appeal on the 303 a three arguing that that rule gives them a right to appeal the way I read the rules. And I don't have a case on this, but the way I read the rules is a 303. Uh, if there was a 303 appeal, another party in the case can join in the 303 a three. If that that's contemplated for in the rule 303, but 304 does not have a light provision. It does not have a provision that says if another party is, is, has an appeal under 304, all the parties can join that's missing. So we, we don't believe it's a proper basis for jurisdiction. And Mr. O'Donnell argues, well, it's our privilege. We ought to have our say in court. My response to that is, um, the rules were drafted at the same time, uh, 303 and 304, and one is explicit and the other one has no provision. So I think that was the intent, uh, with respect to the rules. So how does, how does volt protect themselves then, uh, with respect to privilege? Well, at any point along the line for the three hearings leading up to this, they could have come in and made a, any, any sort of motion on the 304 a for a special finding. They could have made that a written motion, uh, for the last hearing too. Uh, but they failed to do so. So what we have instead is they essentially sat silent in the trial court, except for one brief in terms of briefing into the last briefing. Uh, they filed one brief, actually two briefs on the final round and, uh, up on appeal. They have 70 pages of argument related to privilege that they've never made below. Uh, they, in particular, they, they make arguments, uh, about the scope of discovery for the first time on appeal. This is an end around the rules and it shouldn't be allowed. We don't think they have jurisdiction, but let me orient back to the issue of the claim. I disagree with many things that Mr. O'Donnell said about the background of the claim, but what's critical here is Caterpillar is seeking coverage under the traveler's policy as an additional insured. It is seeking the claim file and the reinsurance documents created by travelers in the possession, custody, and control of travelers. I said in the, in the lower court, and I say again, Mr. O'Donnell's firm, which has been involved for some time, uh, in terms of the defense, we don't seek their documents. We have not sent a subpoena to his law firm. We haven't asked, uh, Volt to produce Mr. O'Donnell's files. We have not asked for the Alabama council's files. We haven't sent a subpoena to the law firm or asked that Volt produce Alabama council's files. However, what we find ourselves in is by travelers and Volt's conduct, we're getting nothing about the investigation of Caterpillar's claim under either the insurance policy or under the contractual indemnification provision that Caterpillar has with Volt. This is a, a, a stone wall of all factual information in the investigation of Caterpillar's claims by either the insurer, travelers, or Volt. With respect to burden, I think it's absolutely important to talk about burden of privilege. Volt has the burden of asserting privilege. Many things they assert, they just assert. I've heard things with this argument that I've never heard before. Counsel makes argument in the trial court without record of support. I want to give an example, just one example. This is from page eight of the reply. Volt quote, Volt knows, however, and travelers asserts, comma, that somewhere in those records is privileged information that travelers received from Volt for purposes of defending this lawsuit. What's the record site for that? What's the, any site whatsoever? There's nothing. There's a failure of proof. Trials articulated that there were five Volt non-attorney employees who were on their law. One of them offered a declaration or an affidavit saying, I spoke to travelers about X and it was a privileged conversation or intended to be privileged. There's nothing like that. The only affidavit or declaration offered by either party is the Williams declaration with respect to the traveler's briefing. We've, we've told you, we believe there are a lot of infirmities with that, and it was filed untimely in the fourth round. What was interesting about that is if you look at the Williams declaration, it doesn't say anything about any employee of Volt. It doesn't make any representations about a Volt reason for a communication, the people who are involved, why it might be privileged. There's no factual predicate anywhere that can be pointed to in the record for these assertions. Also, the Volt and travelers, but here we're on the Volt argument, steadfastly avoid discussing counterclaim number four, which is where travelers says there's no coverage for Volt under the traveler's policy. Why on earth would a party give privileged information to an adverse insurance carrier? Mr. O'Donnell in his, his paper says he's mandated to do so under the cooperation clause of waste management. That's a, that's in coverage litigation. These documents were created well before the litigation. Mr. O'Donnell asserts that he was defending that, that he's gotten involved. We have no record for when travelers undertook the defense of Volt. They have to have a date in order to invoke the insurer, insured privilege. They have to have a date for when that happened. The only date that appears in the record is one that I mentioned in the trial court of July of 2014, based upon an interrogatory response that I received. That means there's no insurer, insured privilege anywhere before July of 2014 between Volt and travelers, but the insurer, insured privilege couldn't even take place then because the critical point continues to be, are the documents in the claims file and the reinsurance file created for the dominant purpose of transmitting them to attorney for the defense of Volt? And the reinsurance rep got involved with the defense of Volt or submitted anything in the record. So that is just a complete failure of proof. Mr. O'Donnell refers to the letter that Caterpillar sent to Volt with respect to the contractual identification provision running between Volt and Caterpillar. That document says essentially the underlying vendor action had been amended. And given that, I'm quoting, given that the fact that the plaintiffs have now directly asserted claims of negligence by a Volt employee, Caterpillar hereby places Volt on notice that Caterpillar intention to seek all remedies that may be available under the MSPA, et cetera. So that notification, according to the case law, is not a threat of litigation. We cite international insurance company versus certain underwriters of Lloyd's. But again, that Mr. O'Donnell's argument moves the mark here because the question is not when Volt anticipated litigation, but when travelers anticipated litigation, because these are travelers documents. How did travelers treat these documents? They kept in one claim file travelers, I'm sorry, Caterpillar and Volt's documents for all of 2013 and for some part of 2014 until Caterpillar sued Volt. Then they broke off and made a second claim file for the Volt documents. Travelers treated us as not adverse for purposes of insurance coverage. I also want to go back to the issue of Helen Alford, the defense counsel in Alabama. I deposed Mr. Mann, who was the claims handler for travelers. I asked him, what were your communications with Helen Alford? Didn't draw any objections from Volt's counsel or travelers counsel because his answer was, I've communicated with Ms. Alford about Caterpillar's claims. I've communicated for coverage. So to the extent that Helen Alford is mentioned in the logs, we have testimony from the claims handler. He was talking to her about Caterpillar's claims for coverage. One of the reasons why we see these files is we have a notice issue in this case. There was notice in May of 2013 and it was provided and travelers at first got it and said, Caterpillar, you're late, Volt, you're late. But guess what? They turned around and they accepted coverage for Volt, dropped the notice defense on the same facts. So one of the things that's so important for us is we want to understand what in these documents made them change their mind with the exact same notice facts and treat Caterpillar as having no notice but treat Volt as fully covered. Mr. O'Donnell mentions the Gallagher-Bassett and the Willis documents and I really want to be crystal clear about this. Those documents are related to subpoenas issued by Caterpillar to third parties. They forwarded a discreet set of documents. Mr. O'Donnell went to court. He said he had physically reviewed all the documents and he was asserting privilege. He must have convinced Judge McCuskey that he made a threshold showing a privilege because the judge decided to take the documents in camera review. Those documents are not at issue on this appeal. There's nothing about the Gallagher-Bassett documents that are on appeal. Those documents are completely separate. The documents that are on documents led to the claim and reinsurance documents kept with Caterpillar. The issue of burden is important because all assertions of any privilege here are very non-specific and it is Volt's obligation to prove privilege. What did they do in the record to show any of the privileges they're asserting? Is there any testimony or any affidavit? And the answer is no. Just counsel's argument. That's not sufficient to sustain a privilege. With respect to the scope of discovery, Volt argues that these documents are beyond the scope of discovery in Judge McCuskey's rulings. The scope of discovery in this case was as a result of 14 briefs and four oral arguments. Judge McCuskey spent an enormous amount of time establishing the scope of discovery. And in doing so, he specifically carved out the certain insurance coverage issues, certain things related to Caterpillar's claims, namely discovery related to whether or not the liability here related to Volt's work, which is one of the conditions for Caterpillar to get coverage, the notice issue, and Caterpillar's bad faith claim. The Bender record comment relates to whether or not he was going to allow the case in Alabama to be retried in Illinois or whether he was going to confine the Bender record evidence to what was used at trial or pre-trial and used at the time of deliberate amount of effort. And the scope of discovery should not be disturbed because it is under an abuse of discretion review and it is a solid ruling based upon the case law. You can see my time is just about up. Thank you very much. Any questions? Any questions? No, no questions for me. Thank you. Thank you, Mr. Reddy. Mr. O'Donnell, do you have any rebuttal? If I may, I understand I have five minutes, correct? That's correct. Thank you. Briefly, as to the issue of the dominant purpose, we can't address his argument that we don't know if there was a dominant purpose or not. That's because the three binders that we submitted to Judge McCuskey pursuant to our motions for protective order that were filed to assert our privileges. The first two binders pertain to a subpoena to Gallagher Bassett, our primary cares claim administrator. And then the second binder pertain to the subpoena sent to our claims consultant, Willis Towers. Those two binders Judge McCuskey had in February. And that's why the February order says that he's going to review those binders before he makes any determinations about issues of votes privileges. For counsel to sit here and say that we sat on our rights is specious and frivolous. And in fact, I would point out to the court that there's a judicial admission made that I've already referenced on direct on my direct argument that they said in the trial court before Judge McCuskey in the hearing in March, we are not trying to get underneath Bolt's hood regarding the defense documents that travelers possesses. Despite that judicial admission and that concession, ultimately they changed course in the trial court and realized Judge McCuskey was confused and didn't understand the fact that travelers had several hundreds of pages of documents of my reporting. Now travelers also has documents that came upstream before I was involved when I was hired in February 14 to defend the Illinois first filed action to know what the dominant purpose of travelers communications with bolt were with the eight volt employees that were communicating with travelers, including our risk manager, including our in-house counsel to know what that dominant purpose is. There needs to be the in-camera review. The third binder though was provided in April. And that was with the suggestion from Mr. Reedy, the agreement in court in the March hearing that the third binder of our privileged materials that didn't pertain to the Gallagher Bassett subpoena or the Willis subpoena, our claims handlers, our own claims documents, the first two binders, the third binder was other claims documents. We consider to be confidential, including other documents, communicating with our insurers when they're suing us for 40 some million dollars. That third binder was never reviewed by Judge McCuskey either. And that is why Judge McCuskey said at the hearing in August, when he says, turn over all these documents, well, I'm not dealing with gold. I'm not addressing bolt. And I, I, I just need to point out here that for counsel to say that we slept on our rights overlooks the February order that said that Judge McCuskey was going to review all of our privilege documents in the first two binders, and then overlooks the March order at paragraph six that they drafted that said that the court will refrain from addressing privileges bolt has in travelers documents until after it has reviewed the binders, all three binders. When, when that order was entered in March, we were still preparing the third binder. We provided that binder to the court then at the end of April. I was recently in court last week on this case and Judge McCuskey said, you know what, I'm retiring. You better take those binders back because I never looked at them. And they, now I have the same binders we privilege. So for them to say, we slept on something, they drafted the order that said that he won't rule rule on our privileges until he looks at the documents. This is a completely misleading argument to this court. And a judicial admission was made in March that they did not want to get under our hood or get under our tent as Judge McCuskey said, you'd call it in the Midwest. Now, irrespective of who had the first duty to defend the insured has to report to the excess carrier who has the duty to indemnify above the primary duty to defend. And that's what bolt was doing. And that is abundantly important here. I can't stress to this court. Now, this is a simple decision for this court. From our perspective, they may have some claim to their claim to coverage, but under Illinois law, there's no case law that says that they can sue us and then compel our insurer to turn over the insurers privilege materials. How do we decide if something's ordinary as they call it, their position here is not supported by the law. There's no holding in any appellate court of Supreme court that says ordinary claims documents are just presumptively discoverable by your adversary in litigation where $40 million is at We have hundreds and hundreds of entries for a 10 month period over these communications and these documents, including our initial attorneys reporting back upstream. He says that Gary man says, Oh, I looked at coverage. Well, Gary man was also handling the claim for volt at that time before the suit was filed. Thank you for your time today. You we thank both of you for your written decision as quickly as possible. The court stand in recess. Thank you both.